**Louis HUTCHISON, Gayle Reese, and RHR, Inc., Plaintiffs,**

v.

**KFC CORPORATION, Defendant.**

**No. CV–S–92–087–PMP (LRL).**

United States District Court, D. Nevada.

Sept. 8, 1993.

---

**518**

Guy E. Matthews, Lee N. Joseph, Matthews and Associates, Houston, TX, Anthony V. Sorrentino, Barker, Gillock, Koning, Brown & Earley, Las Vegas, NV, Stanley B. Binion, Baker, Brown, Sharman & Parker, Houston, TX, for plaintiffs.

John A. Donovan, Jeffrey H. Dasteel, Dawn R. Ross, Skadden, Arps, Slate, Meagher & Flom, Los Angeles, CA, Samuel S. Lionel, Lionel, Sawyer & Collins, Las Vegas, NV, for defendant.

*ORDER*

PRO, District Judge.

Before the Court is Defendant KFC Corporation's ("KFC") Motion for Summary Judgment (# 86) which was filed on January 22, 1993. Plaintiffs Louis Hutchison, Gayle Reese and RHR, Inc. (collectively referred to as "Farm Basket") filed their Opposition (# 89) on February 17, 1993. KFC filed its Reply (# 101) on March 8, 1993.

Also before the Court is KFC's Motion to Strike the Affidavits of Kent E. Prestwich and Louis Hutchison and Declaration of Guy Matthews (# 97) which was filed on March 5, 1993. Farm Basket filed its Opposition (# 103) on March 18, 1993. KFC filed its Reply (# 109) on April 1, 1993.

Additionally, on April 5, 1993, Farm Basket filed a motion entitled Supplemental Case Authority to Plaintiffs' Response to Defendant's Motion for Summary Judgment (# 110). On April 14, 1993, KFC filed a Motion to Strike Plaintiffs' Supplemental Authority (# 112).

On May 10, 1993, this Court entered an Order (# 116) requiring the parties to file Supplemental Briefs regarding the application of the Uniform Trade Secrets Act as adopted by Nevada, Nev.Rev.Stat. § 600A, et seq. Plaintiffs filed their Supplemental Brief on June 8, 1993 (# 117) and Defendant filed its Supplemental Brief on June 9, 1993 (# 118).

On September 3, 1993, a hearing was conducted regarding Defendant's Motion for Summary Judgment.

## I. *Facts*

In the late 1970's, Plaintiff Louis Hutchison ("Hutchison") allegedly developed the idea for "skinless fried chicken" to be sold in fast-food restaurants. After test-marketing the product in 1982, Hutchison placed it in the seven Las Vegas fast-food restaurants owned by himself and Plaintiff Gayle Reese ("Reese") through their company, RHR, Inc. Hutchison and Reese claim to have treated the preparation of the skinless fried chicken as a trade secret from its inception.

In 1983, Hutchison contacted Richard Moloney ("Moloney"), the Vice–President of Kentucky Fried Chicken ("KFC") National Management Company, a KFC subsidiary that oversaw the operations of company-owned stores, about the possibility of KFC acquiring the rights to this skinless fried chicken product. Moloney wrote Hutchison a letter in May 1984 advising him that KFC was not interested in his idea because it did not mesh with KFC's marketing strategy at the time. Hutchison, however, persisted with his efforts and persuaded Moloney to talk with Don Doyle ("Doyle"), the President of KFC, about the skinless chicken product.

In October 1984, KFC sent a former employee, Tony Wang ("Wang"), to Las Vegas to evaluate the Plaintiffs' skinless chicken product. At Plaintiffs' request, Wang signed an agreement not to disclose any of Plaintiffs' alleged trade secrets. Wang tested several of Plaintiffs' products, including the skinless fried chicken. Plaintiffs claim that they disclosed to Wang basic procedures for preparing their product and took him to one of their restaurants where he witnessed the cooking procedure (Hutchison Deposition 492–495). Wang wrote a letter to Moloney saying that he thought the product had merit as a version of fried chicken with reduced calories, fat, and salt, but questioned whether KFC wished to add another fried chicken product to its menu.

Moloney and Doyle met with Plaintiffs in Louisville, Kentucky, in December 1984. Hutchison made a presentation with two brochures, which Defendant claims contained no proprietary information (# 86, page 8). After the presentation, Doyle told Plaintiffs he was interested in developing non-fried products, but that he would consider the matter.

On January 7, 1985, Doyle wrote a letter to Plaintiffs saying that KFC was not interested in the skinless product at that time because it did not interface with KFC's operations.

In 1987, KFC's Research and Development ("R & D") division began working on new products under the "Good For You" slogan, which were to be lower in salt, fat, calories, and cholesterol. In December 1987, G.V. Rao ("Rao"), the head of R & D, suggested that an employee should develop a skinless product in order to further reduce the fat and calories in the chicken. In his deposition, Rao testified that he had known since 1979 of the beneficial qualities of removing the skin from the chicken (Rao Deposition 126–127). Phil Bouckaert, Vice President of R & D for KFC in the late 1970's and early 1980's, also testified in his deposition that he was aware that taking the skin off the chicken lowered the fat and calories and that a group of people, not the Plaintiffs, presented a skinless chicken product to KFC around 1983 or 1984.

In 1988 and 1989, KFC's R & D division continued to work on the skinless chicken product and the marketing division evaluated consumer demand. The first skinless prototype was "soft-breaded" and pressure-fried. This prototype was abandoned because KFC thought that it would cut into sales of its skin-on, soft-breaded product, which was KFC's best-selling product. KFC subsequently adopted a second prototype, which was a crispy, open-fried freezer-to-fryer product. This product was test-marketed, and then introduced nationwide in 1991.

Rao testified that he independently developed KFC's version of skinless fried chicken, and that when he developed the product, he had never heard of any competitor having such a product (Rao deposition 124–125), and had never heard of Plaintiffs or tasted their product. *Id.* at 123, 127. Rao also testified

that he had not spoken with Moloney, Doyle or Wang about the product prior to the completion of the first prototype. *Id.* at 103, 110, 156. Plaintiffs allege that their method for preparing the skinless fried chicken was a trade secret and that KFC misappropriated that trade secret and used it to develop their own version of skinless fried chicken.

## II. Discussion

### A. Elements of a Trade Secret

The elements for proving a misappropriation of a trade secret can be derived from the Uniform Trade Secrets Act, which Nevada adopted in 1987. *See* Nev.Rev.Stat., § 600A, et seq.

In the act "trade secret" means information including a formula, pattern, compilation, program, device, method, technique or process that:

(a) derives independent economic value, present or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(b) is the subject matter of efforts that are reasonable under the circumstances to maintain its secrecy.

Nev.Rev.Stat., § 600A.030.

"Misappropriation" means:

(a) Acquisition of a trade secret of another person by a person who has reason to know that the trade secret was acquired by improper means;

(b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(2) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

(II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;

Nev.Rev.Stat., § 600A.030.

### B. The Trade Secret Alleged in This Case

There is considerable disagreement between the parties as to what the trade secret at issue is. KFC claims that the alleged

trade secret at issue is that Plaintiffs cut the chicken, removed the skin, marinated it, dipped and breaded it, and fried it. KFC argues that this is not a trade secret because none of these steps are proprietary to Farm Basket, that the combination of procedures is not a trade secret, and that this process is generally known to the chicken industry, including KFC, who has used this same formula (without skinning the chicken) in preparing other items on its menu.

Farm Basket contends that their trade secret is much more complicated than KFC believes. They argue that their trade secret consists of a "method, technique, and/or process of economically producing a skinless fried chicken product that looks and tastes like skin-on fried chicken cooked in the same manner, but which contains substantially less fat, calories, salt and cholesterol.... The procedures involved in this trade secret are skinning the chicken in a fast and economical manner; marinating the chicken to introduce the desired flavoring, moisture and to create a sticky protein gel which serves as a substitute skin; dipping and breading the chicken pieces; and the cooking procedure." (# 89, p. 3.)

Several facts suggest that KFC's characterization of the "trade secret" is the correct one for the purposes of this Motion. First and foremost, when Farm Basket's method is carefully examined, all that is left are the general processes of cutting, skinning, marinating, dipping and breading, and frying the chicken.[1] The general use of terms such as "economical" and other descriptive terms does not transform the fact that skinning is skinning and marinating is marinating.

Second, the record before the Court demonstrates only that general procedures were conveyed to KFC. Even though Farm Basket asserts that proprietary information was relayed to KFC at the meeting in Louisville, Kentucky, in 1984, Hutchison admits in his deposition that at that meeting he did not discuss specific marinating times or cooking

temperatures (Hutchison Deposition, 314), nor did he discuss the method for removing the skin from the chicken. *Id.* at 318. While Hutchison did tell the KFC representatives that the product was marinated, he did not tell them the details about tumble marinating or the sticky protein gel that served as a substitute skin. *Id.* Furthermore, the brochures used during this meeting contain no secrets regarding the preparation of skinless fried chicken, and any confidential material contained therein was in regard to sales data and marketing strategy. (Exhibits F and G).

Finally, the record before the Court demonstrates that each party employs very different methods when implementing each of the general steps of skinning, cutting, marinating, dipping and breading, and cooking the chicken. Farm Basket removes the skin of the chicken in the restaurant by hand, and KFC removes the skin from their chicken mechanically at a processing plant. Farm Basket cuts their chicken into nine pieces, KFC cuts the chicken into seven pieces. Farm Basket marinates their chicken using a "tumble marinator" and a commonly available marinade, and KFC marinates its chicken by injection with its own secret marinade. Farm Basket breads their chicken by hand, dipping it in their own solution, and breading it in their own flour mixture, while KFC breads its chicken by machine, predusting it with a specially prepared flour mixture, dipping it in a special batter, and then breading it in a specially prepared flour mixture. Farm Basket neither blanches nor freezes their chicken and KFC does both. Finally, Farm Basket pressure-fries their chicken at certain temperature intervals and KFC open-fries its chicken without pressure at different temperature intervals.

Notwithstanding the semantic distinctions proffered by Farm Basket, this Court finds that the alleged "trade secret" at issue in this case is the general process of skinning, cutting, marinating, dipping, breading, and frying the chicken to produce a skinless fried chicken product.

---

1. Farm Basket might have had a trade secret with respect to certain aspects of the preparation of their version of skinless fried chicken. The recipes for the batter, flour mixtures, and marinade, the cooking temperatures, and the contents of the cooking oils could all qualify as trade secrets. But Farm Basket does not allege that KFC misappropriated any of these potential trade secrets.

*C. Is Plaintiffs's Process A Trade Secret?*

 If the subject matter of a trade secret is obvious and not a secret, then there can be no trade secret. *See Self Directed Placement Corp. v. Control Data Corp,* 908 F.2d 462, 465 (9th Cir.1990) (citing *Walker v. University Books, Inc.,* 602 F.2d 859, 865 (9th Cir.1979), *Computer Care v. Service Systems Enterprises, Inc.,* 982 F.2d 1063, 1073 (7th Cir.1992). Furthermore, being the first person to develop and introduce a product into the market does not guarantee possession of a trade secret. *See Pressure Science, Inc. v. Kramer,* 413 F.Supp. 618, 626 (D.Conn.1976). In *Pressure Science,* the plaintiff was the first company to manufacture C-seals, and they used a die-cast method. Despite this fact, the court held that no trade secret existed because, "[t]he die has a very simple and basic design; and, as one of Pressure Science's key witnesses testified, it could be reproduced 'in a minute' by an experienced engineer who viewed it opened." [2]

The record in this case shows that at the same time KFC introduced its version of skinless fried chicken, five other fast-food restaurants also introduced their own versions of skinless fried chicken.[3] Additionally, Phil Bouckaert, the Vice President of R & D for KFC attended a presentation in 1983 or 1984 where a group of people, other than Plaintiffs, tried to get KFC to license their version of skinless fried chicken. As these events prove, it is clear that the subject matter of making the product was obvious and not new or a secret, and that it was generally known to and readily ascertainable by others who could obtain independent economic value from its use.

These general procedures that KFC allegedly misappropriated do not satisfy the section of the Trade Secrets Act which states that the method or technique must not be generally known to or readily ascertainable by other persons who can obtain economic value from its disclosure. Nev.Rev.Stat., § 600A.030.

IT IS THEREFORE ORDERED THAT Defendant's Motion for Summary Judgment (# 86) is hereby granted.

IT IS FURTHER ORDERED THAT Defendant's Motion to Strike Affidavits/Declaration Filed by Plaintiffs (# 97) is denied.

IT IS FURTHER ORDERED THAT Defendant's Motion to Strike Plaintiffs' Supplemental Case Authority (# 110) is denied.

IT IS FURTHER ORDERED THAT the Clerk of Court shall forthwith enter Judgment in favor of Defendant and against Plaintiffs.

---

**2.** *Pressure Science* was decided under Restatement of Torts Section 757 and not the Uniform Trade Secrets Act, but that does not mean that the case is barred from consideration as persuasive authority. "Although all of the restatement factors are no longer required to find a trade secret, these factors still provide helpful guidance to determine whether the information in a given case constitutes a 'trade secret' within the definition of the statute." *Optic Graphics v. Agee,* 87 Md.App. 770, 591 A.2d 578, 585 (1991).

**3.** The record shows that in 1981, before Farm Basket even began to make skinless fried chicken, Pudgie's, a fast-food restaurant chain in New York, offered skinless fried chicken as its primary product.